The opinion of the court was delivered by
Randolph, J.
The only question in this case, necessary to be considered by the court, is, was the defendant authorized to sell the cotton, shipped on board his vessel ?
As there was no evidence of any such authority, having at any time been given by the owners, the defendant can only be justified in selling the cotton, by the necessity and law of the case.
The captain of a vessel must of necessity, be clothed with power and discretion sufficient to meet the exigencies of the voyage. He is the confidential agent of the owners ; may bind them *676 by contract in their absence; and when in a foreign port, may hypothecate, and even sell the ship and cargo, if necessity requires it to. be done, for the benefit of those interested. 3 Kent’s Com., Lecture 46, and the cases cited; Reid v. Darby, 10 East., 143; 24 Pick. 35; 2 Sumner, 206; 13 Peters, 387; 2 Wash., C. C. R. 150; Abbott on Shipping, part 2, ch. 3. But absolute necessity will alone authorize the captain to sell the cargo at a foreign port short of its destination, and thus break up the voyage. In Wilson v. Millar, 2 Starkies, 3 Eng. Com. Law 215, the vessel on h'er voyage to Africa had been captured by a privateer, and recaptured by a British ship of war and taken into Bermuda, where the recaptors claimed salvage; three months would be required to repair the vessel, and the cargo was perishable. The captain not being able to procure seamen, sold the cargo. Lord Ellenborough says, “ I think he had no right to determine the voyage, and make a general sale of the cargo. Nothing but extreme necessity will warrant a master in making sale of any portion of the cargo. He might have raised something by way of hypothecation, sufficient to defray the expenses of salvage. To allow the master such an unlimited dominion, as contended for, would tend to the destruction of all commercial adventures.” In Cannan v. Meaburn, 1 Bing. 243, 8 Eng. Com. L. 309; where the captain put into an intermediate port in distress, and thinking that the expense of repairs- would frustrate the adventure, sold the cargo under an order of a Vice Admiralty court; though he might have repaired his own ship, or reshipped the goods by another vessel; it was held, that the captain had no authority for selling the cargo. Park, J., says, nothing but extreme necessity will justify the master in disposing of the cargo. The same principle is held in Morris v. Robinson, 3 Barn. and Cress. 196. Freeman v. The East India Co., 5 Barn. and Ald., 617; 7 Eng. Com., R., 211. Some indigo was sold by the captain, acting bona fide, for the benefit of all concerned, according to the best of his judgment, but as there was no absolute necessity for the sale, it was held that the captain had no authority to make it. In Smith v. Martin, 6 Binn, R. 262, Tilghman, C. J., says, “ the ship having been driven out of her course by stress of weather, the charge of the *677 cargo devolved upon the master, whose duty it was to take a proper care of it. In such case, the master has power to sell the goods, which are damaged, or of a perishable nature; but those which are in a good condition and not perishable, he has no right to sell, without the order of the owner, to whom he is bound to give immediate information.” In Bryant v. The Commonwealth Ins. Co., 3 Pick., 131, and also in 13 Pick. 543, the court held that the master will be justified in selling the cargo, only by a legal necessity ; no usage of the place where the vessel is wrecked; or that a sale is the best thing to be done, and what a prudent man would do, will be sufficient. If the cargo could be taken to its place of destination, at a loss not exceeding fifty per cent, it was his duty to take it there, and not break up the voyage by a sale. In Han v. Franklin Ins. Co., 9 Pick., 466, it was decided that the captain had no power to sell a damaged ship, if he was able to communicate with and consult his owners.
Was there then in the present case such an absolutfe or legal necessity, as authorized the captain to sell his cargo ? I think not, except as to that part, which was damaged. The 114 or 116 bales, included in the second sale, according to the proof, were neither damaged nor perishable; they might have been shipped for Philadelphia, by the way of Charleston, in the same vessel, which took them for the purchasers; or, they might have been safely kept, till the defendant’s vessel was repaired, and taken by him to their place of destination; and the fact that some of the bales may have required re-packing or cording, or that the storehouse was not considered a very safe place of deposit cannot constitute such a necessity as the law requires; especially in a case, where the owner of the cargo might have been communicated with, and his directions taken; for without reckoning the time the vessel lay at St. Augustine, prior to the first sale of the cotton, an entire month intervened between that and the time of selling .the bales in controversy; and yet the owner resided at Savannah, where a letter would have reached him by mail in a few days; but there appears no evidence of such communication having been made. Under such circumstances, although the defendant may have acted bona fide, and according to his judgment for the benefit of all concerned, yet he can only justify his *678 act in a court of law by showing in addition to these, that the case was one of extreme necessity. Let the verdict be set aside and a new trial granted.
New trial granted.
Nevius and Carpenter, J. J., did not hear the argument and expressed no opinion.